UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-335-GWU

JOE ESTEP, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

    Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

06-335 Estep

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

06-335 Estep

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

06-335 Estep

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In

such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Joe Estep, filed an application for DIB on September 29, 1997, alleging disability beginning February 13, 1973, and filed another application on April 8, 2004 alleging the same onset date.  (Tr. 59, 521).  After several administrative denials and appeals, including a decision issued by the undersigned on July 26, 2002 (Tr. 549-55), it was determined that Mr. Estep's Date Last Insured (DLI) was June 30, 1973, meaning that he was required to establish disability existing between February 13, 1973 and the DLI.  (Tr. 522).

After reviewing the evidence and obtaining testimony from a Medical Expert (ME), an Administrative Law Judge (ALJ) concluded that Mr. Estep did not have a "severe" impairment for any continuous 12 month period prior to June 30, 1973, and therefore was not entitled to benefits.  (Tr. 526-7).  The Appeals Council declined to review, and this action followed.

06-335 Estep

Despite the long procedural history of the present case, the issue presented is whether Mr. Estep was able to show that he had a "severe" impairment in the narrow period of time between February and June, 1973. He testified at the July 14, 2005 administrative hearing that he begin mining before the age of 18, which would have been approximately 1957, and continued until 1973, when a doctor told him to stop working because of lung problems related to coal and rock dust. (Tr. 820). He did not attempt to find other work, although he did continue smoking. (Tr. 821-2). In addition to breathing problems, he recalled having trouble walking during the relevant time period because of a back problem which his doctor had described as a slipped disc. (Tr. 824). Asked about office notes from a treating cardiologist in 1989, well after the DLI, that he had been able to walk several miles without rest or difficulty, and had gone deer hunting without problems (Tr. 414), Mr. Estep testified that he had been able to go deer hunting but did not walk that far. (Tr. 830). However, he appeared to testify that he was able to walk 30 minutes one way over the mountains. (Id.).

There is a large amount of evidence in the form of chest x-rays as well as some pulmonary function testing from the early 1970s, either before or shortly after the DLI. Several physicians read chest x-rays as being completely negative. (E.g., Tr. 344, 470, 483, 485). Other physicians found some evidence of pneumoconiosis to varying degrees (Tr. 337, 347, 349, 352, 383, 391, 430, 449, 451, 469, 481).

06-335  Estep

Several physicians also administered pulmonary function tests.  Dr. Harold Bushey obtained a normal pulmonary function test in January, 1973 (Tr. 339), although in May, 1972 he had diagnosed pulmonary fibrosis based on a chest x-ray and advised the plaintiff to change to a job with minimal dust exposure.  (Tr. 337).  Dr. William Anderson obtained entirely normal pulmonary function studies on May 17, 1973, in addition to a normal chest-x-ray and EKG, and concluded that the plaintiff had no evidence of pneumoconiosis or silicosis.  (Tr. 344).  Dr. Richard O'Neill obtained normal pulmonary function testing and arterial blood gas studies on March 8, 1974.  (Tr. 349).  Dr. Robert Penman found only slightly reduced breathing capacity in January, 1974, equating to a mild airway obstruction.  (Tr. 352).  As late as January 22, 1990, more than 16 years after the DLI, and after Mr. Estep underwent cardiac bypass surgery (Tr. 401), Dr. Glen Baker obtained pulmonary function studies that were within normal limits, although he concluded that the plaintiff should have no further exposure to dust and might have difficulty doing sustained manual labor on an eight hour basis, even in a dust-free environment. (Tr. 427-34).

     The ME, Dr. Susan Bland, a board certified specialist in internal medicine and occupational medicine (Tr. 805), reviewed the evidence and testified at the 2005 administrative hearing.  She noted that there was some variability in pulmonary function testing but many of the tests during the relevant period were

normal. (Tr. 842-5). There was also variation in the interpretation of chest x-rays. (Tr. 847-50). There were some "very sketchy" office notes going back to the 1960s which included some indications of back pain, but there was no evaluation and no x-ray until 1975, and another x-ray in 1982, both of which showed some arthritic spurring but no disc space narrowing. (Tr. 135, 141, 846-7). Dr. Bland testified that, taking all of the evidence together, she did not believe that Mr. Estep had a "severe" impairment under the Social Security Regulations. (Tr. 850). While it was possible that he had early pneumoconiosis, any functional impairment would have been mild. (Tr. 871). His back pain would not have required any permanent restrictions. (Tr. 852). There might have been some impairments which had developed by 1988, but even this possibility was questionable in view of more normal pulmonary function testing at the time. (Tr. 854-5).

Clearly, substantial evidence exists to support the ALJ's conclusion that the plaintiff did not have a "severe" impairment. While there is some evidence that could be interpreted as supporting another conclusion, the issue is only whether there is substantial evidence.

Counsel for the plaintiff makes several arguments on appeal. First, counsel suggests that the ALJ and the ME should have used the legal standards in effect in 1973, rather than those in effect at the time of the decision in 2005. Counsel does not suggest which legal standard would have been different in 1973, but the

Commissioner notes that regulations in effect at the time defined disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or impairments which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. Section 404.1501(a)(1) (1973).  Under these standards, a person who did not have a "severe" impairment under the current regulations could not be found to have an "inability to engage in any substantial gainful activity." Accordingly, this argument is without merit.

The plaintiff also argues that it was error for the ALJ not to obtain a residual functional capacity assessment, citing only District Court opinions from a different circuit which have no precedential value in this court.  In fact, in view of the ME's testimony that the plaintiff did not even have a condition that would minimally affect his ability to perform work-related activity, it would have been pointless to obtain a formal residual functional capacity assessment.

The plaintiff suggests that a finding by the U.S. Department of Labor in 1991 establishes that the plaintiff had pneumoconiosis prior to the DLI.  (Tr. 75-89). However, 20 C.F.R. Section 404.1504 provides that decisions by other governmental agencies are not binding on the Commissioner of Social Security, who must make a decision based on Social Security law.  While such determinations must be considered, see Social Security Ruling 06-03p, the ALJ in

the present case concluded that the Department of Labor decision was not probative because it "was based on resolving conflicting evidence and opinion by comparing the qualifications of the medical sources offering them rather than by analyzing the merits of the medical, clinical findings themselves."  (Tr. 525).  The ALJ concluded that it was more persuasive to rely on the testimony of the ME.  Therefore, it cannot be said that the defendant ignored the Department of Labor determination.

Finally, the plaintiff alleges that it was error for the ALJ to deny a motion for a full scale evaluation despite evidence from the plaintiff and others that he was functionally illiterate. (Tr. 817-18, 876-7). Counsel suggests that illiteracy may have reflected "an underlying mental impairment such as borderline intellectual functioning which would warrant further evaluation in order to properly analyze the effects of any mental impairment and illiteracy on the plaintiff's ability to do work-related abilities."  Plaintiff's Brief in Support of His Motion for Summary Judgment, Docket Entry No. 16, p. 19.  While illiteracy is a vocational factor used in determining a plaintiff's residual functional capacity, 20 C.F.R. Section 404.1564, it is not a factor that is considered in the sequential evaluation until the plaintiff has proven that he has a "severe" impairment, that he does not meet a Listing, and that he cannot perform his past relevant work. Garcia v. Secretary of Health and Human Services, 46 F.3d 552, 554 (6th Cir. 1995).

06-335 Estep

The plaintiff did not even allege a discrete mental impairment, and there is no evidence that he ever sought treatment for mental health conditions or received any psychotropic medication. Accordingly, this argument is also without merit.

The decision will be affirmed.

This the 15th day of August, 2007.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**